Our second case this morning is Rosenberg v. Redflex Traffic Systems. Mr. Williams, whenever you're ready. May it please the court, my name is Michael Williams and I'm counsel for the appellant Aaron Rosenberg. This case arises out of the Chicago False Claims Ordinance, which is a city statute that is modeled after the Federal False Claims Act. And as this court certainly knows, under the Federal False Claims Act, the court applies a three-part test. In this case, the district court judge found that each part of that test under the public disclosure bar was satisfied in essence, meaning that Mr. Rosenberg should be dismissed from the case, and we believe the district court erred in that decision. I want to first focus on the second step of the three-step test, which I'll call the based-upon step. In Glazer v. Wound Care Consultants, this court changed its interpretation, modified its interpretation of the term based-upon, in large part because the court concluded that by interpreting based-upon the way the court had in its prior decisions, that rendered the third step of the public disclosure bar analysis superfluous. That in essence, once the second step was finished or satisfied, you didn't move to the third step. It made it essentially a nullity in a lot of ways. What the district court did here in the district court's interpretation of the phrase based-upon, basically committed the same kind of an error, had the same defect, going the other direction, in that the court's interpretation of based-upon, in essence, looted out the first step or the second step, depending how you look at it, essentially blended them into a single step. And let me explain what I mean by that. As this court's precedents show, the test under the first step of the public disclosure bar analysis, which questions whether or not the allegations in the relator's complaint had been publicly disclosed or in the public domain. The test, as this court has stated it, is whether the critical elements exposing the transaction as fraudulent are placed in the public domain. The court here found that was met, the district court. The second step, as the court in Glazer concluded, questions whether the allegations in the relator's complaint are substantially similar to what's in the public domain. But the way the district court here interpreted substantially similar was, in essence, to repeat the first step. The question the district court asked and then answered was, essentially, are the elements out there? What's in the public domain here in the form mostly of news stories, are those critical elements? There's a lot more than news stories. We've got the Tribune exposés. We've got the Scott Lazar investigation that Redflex did. And then we have the OIG investigation. And that combination of public disclosures encompasses the totality of this fraudulent scheme in which your client was culpable and a co-conspirator. So apart from the audacity of this claim, there are many legal impediments. And if I may address first, Your Honor, the audacity point that you raised. The statute, the FCO, and the FCA both contemplate that somebody who was part of the alleged wrongdoing or actual wrongdoing can still be a relator. And that is dealt with at the relator share portion of the analysis where the judge has discretion to reduce it based on that. So I think from a legal perspective. The judge here was very clear that he thought your client deserved nothing. I agree. I agree. So another reason why you lose. If we go back, we would address that issue and do our best to convince him otherwise. That's an exercise in futility. He was very clear. He was. He was. It was clear the judge did not like my client very much. It's not just personal dislike. Your client was a co-conspirator in this bribery scheme that cost the taxpayers a great deal of money. And he did not voluntarily come forward, which is another legal impediment here. He only spilled his guts when he had to to save his skin from criminal prosecution. Well, pursuant to an immunity agreement with the U.S. Attorney. Well, if I may, Your Honor, let me ask because you've raised it. I'll try and circle back to the based upon issue, but let me focus on the voluntariness issue. This court has not addressed specifically and directly what constitutes voluntariness for purposes of the FCA or the FCO for that matter. In Glaser, notably, the court did reference legal compulsion as perhaps the test for voluntariness. It wasn't directly at issue in that case. But when the court talked about the voluntariness prong somewhat indirectly in talking about the second prong, the court talked about legal compulsion. And I think that's the right test. And while I agree with you, Your Honor, that when my client eventually did cooperate with federal investigators, he did it pursuant to an express immunity agreement. That wasn't the case when he went to the inspector general. He did that voluntarily and there's evidence in the record. Well, counsel, there might be some situations in which voluntariness depends on whether there's legal compulsion or not. But couldn't the word voluntary in the statute be volunteer, you know, someone who takes the initiative to come forward? It doesn't have to mean, I mean, it would still be encompassed within the reasonable definition of voluntariness to understand it in that way, not an absence from compulsion. And that was in essence where the Eighth Circuit came down in the Barth case, was the Eighth Circuit in the Barth case made that distinction, in essence, between the relator who picks up the phone to call an investigator versus the relator who gets a phone call from an investigator. I would submit that as this court considers how it's going to interpret voluntary, it should not use that standard. Because if you think about a situation where somebody who has knowledge, has direct knowledge, is somebody who the government wants to provide that knowledge, gets a phone call from an investigator and then voluntarily talks in any reasonable definition of that term. It has no obligation to do so. That's just not voluntary in the relevant understanding of that term here. He's not a whistleblower. He submitted to an interview with the OIG. He didn't go to the OIG and volunteer information. The OIG contacted him and said, you've got to come in for an interview. That's hardly voluntary. Well, Your Honor, I would point to, and it was actually, interestingly enough, my declaration. I was at the IG interview, and I was the one who arranged that interview. As set forth in my declaration that's in the record, it was not, you've got to come in and talk to us. It was, in essence, they wanted to talk to him because they wanted information from him. There was no subpoena. There was no subpoena power. But still, he didn't pick up the phone and come forward. Correct. And when we think of a volunteer signing up to doing something, taking the initiative, and you say in your brief that you think it requires departing from the language of the statute or looking to statutory purpose rather than the word, but people use that word volunteer to mean that all the time. Well, and I think if we take a dictionary definition of the word volunteer, and we argue that there's Illinois law on this issue, I think it is a broader meaning. I think it means essentially by free will. Some courts have said, well, that doesn't work in this context because complying with a subpoena theoretically is an exercise of free will, and Redflex cites that in their brief. But I think if you take a reasonable definition of volunteer in the context of what this statute is trying to accomplish, which is to get people who have information about wrongdoing, about fraud on the government, to come forward, to imagine a scenario where somebody gets a call from an investigator, doesn't initiate the call, but gets a call. But aren't they supposed to come forward before the writing's on the wall, before they really see where this is going, before the newspaper highlights the basic fraud that he's committed, he's involved in, and they're hot on his trail? And before they lawyer up. Well, I think there's a lot of reasons why people wouldn't come forward in that scenario. People might be afraid. They might be concerned about what their employer's going to do to them if they're now spilling the beans on their employer while they're still employed there. I think the mere fact that somebody gets a phone call and then willingly talks to investigators when they have no obligation, no compulsion to do so, to say that that whole class of people cannot be relators under the statute, I think would have the practical effect of excluding an awful lot of the kinds of relators who we want to come forward, the people who have the information. And I think that that, if you look at it, Barth is the only case, the only circuit that has made that distinction is the 8th Circuit in Barth. If you look at the other circuits, the 3rd Circuit case, which starts with a P but the name's escaping me now, in that case there was a subpoena, and the court talked in terms of somebody who's been subpoenaed. Other cases involve public employees who, as an obligation of their job, is to look for fraud on the government. The only circuit that has made this distinction between getting a call versus making a call is the 8th Circuit, and I would submit that that's not the guidance this court should follow. This court should look to true legal compulsion, which is somebody has no choice. They're under legal obligation facing legal penalties if they don't go talk to the government. If I may circle back just very briefly on the based on prong, I think the correct standard that this court should look to is the standard that this circuit has applied many times, which is did the relator bring new and material information, genuinely new and material information, set forth in Levesky as well as Goldberg and other cases. Here, when you look at Mr. Rosenberg's complaint. What's the timing, though? Don't we look at it at the time he files his complaint? Yes. And when did your client file his complaint? Wasn't pretty much the investigation pretty much complete by that time? Well, we don't know. So we have to talk about we don't know because it's not in the record, and the city has been part of this case did not come forward with what did the I.G. know, and that's the investigation that matters is the I.G.'s investigation. The city didn't tell us what the I.G. knew or didn't know. What we do know is when Mr. Rosenberg filed his complaint that did contain a great deal of information, the operative facts, when the ask for a bribe was made the first time, when the ask for a bribe was made the second time, the discussions internally at the company about whether we're going to pay this bribe, when the contract renewal came up several years later, and there was additional assistance that Mr. Bills, the city employee, provided. That's all in the complaint. That was not in any of the news stories or anything else. It's in the public domain. Now, again, we don't know what the I.G. knew or didn't know at that point because that wasn't provided, and that's not in the record, but Mr. Rosenberg certainly provided enough information that was seemingly valuable enough that the city did not take on the case and say, all right, Mr. Rosenberg, we don't need you anymore. In fact, the city entered into a joint prosecution agreement, as reflected in the record. The city asked Mr. Rosenberg and his counsel to remain involved, co-sign the first amended complaint. In fact, in the record there's a declaration by Mr. Muldoon, one of the lawyers for Mr. Rosenberg, helped write the first amended complaint, a significant part, provided documents to the government. So clearly the city believed that what Mr. Rosenberg had to offer by way of what was in his complaint and the information that he had was new and material. It advanced the case in a meaningful way. Unless there are any other questions, I'll reserve the remainder of my time for rebuttal. That's fine. Mr. Weiss. May it please the Court. My name is Steve Weiss. I represent Redflex, both Redflex Traffic Systems and Redflex Holdings in this case. The District Court properly dismissed Rosenberg as the relator under the public disclosure bar of the Chicago False Claims Ordinance because, one, the allegations in the complaint are substantially similar to facts that were publicly disclosed, and two, Rosenberg was not an original source because his disclosures to the OIG were not voluntary. I'm going to focus my attention on two issues, substantial similarity and voluntariness. Rosenberg is wrong about both the facts and the law concerning based upon and substantial similarity. He argues that the allegations in his complaint were not publicly disclosed and that the complaint is not based upon publicly disclosed facts. In this context, though, based upon means whether the allegations of the complaint are substantially similar to the facts disclosed in the public domain. And a public disclosure occurs when the critical elements exposing the transaction as fraudulent are placed in the public domain. That doesn't mean every detail has to be there, but either the fraud or facts that would lead one to believe there may be fraud have to be disclosed. The Englaser and Bogina and cause of action versus CTA, this court held that a public disclosure is sufficient if it puts the government on notice of possible improprieties. The public disclosure bar applies here because the allegations of the complaint are substantially similar to the public disclosures. And as your honor pointed out, the disclosures we're talking about here were a combination of the articles in the Tribune, other newspaper articles, the Lazar declaration. Those are the primary ones anyway. And so a summary of Lazar's meeting with the OIG is contained in his declaration, which is at Redflex Supplemental Appendix 7 through 8. And that really kind of sums up the state of the investigation at that time. So what was known by the time the complaint was filed? It was already public knowledge that Redflex and Bills had a longstanding bribery scheme involving Redflex bribing Bills to obtain the Chicago contract, and ongoing bribery of Bills funneled through his friend O'Malley to maintain and expand the program. All of that was publicly disclosed. I direct your attention to three of the Tribune articles in particular that show the depth of disclosures, and those would be the articles on October 14, 2012, March 3, 2013, and February 21, 2014. By the time Rosenberg filed his complaint, there had been more than 60 newspaper articles, and all of the elements of the fraud had been disclosed. At most, Rosenberg makes arguments that the complaint included some details that were not publicly disclosed. But a relator is not allowed to proceed independently if he merely adds details to what is already known. The allegations in the complaint covered the same time period, the same type of deceit, and the same facts as in the public domain. And counsel criticized the district court's analysis of the substantial similarity issues, but the district court here made exhaustive factual findings, identifying and comparing the allegations in the complaint with the facts publicly disclosed, and held facts were based on the same fraudulent scheme, the facts were substantially similar, and any additional allegations were just minor details. The district court went so far as to prepare a chart that compared each allegation in the complaint that Rosenberg identified as new with the publicly disclosed information addressing those same allegations. And the district court found that almost every one of those allegations that was identified as being new really wasn't new, it was in either the articles or the declaration or somewhere, it was already in the public domain. As an example, on page 11 of his brief, Rosenberg argues that he disclosed for the first time in his complaint, Bill's unlawful pre-bid assistance. Rosenberg argued that none of these facts had ever appeared in any news story or other public disclosure before Rosenberg filed a complaint. The district court took those facts and made a little chart and showed where each of almost all of the identifiable facts were contained and publicly disclosed previously. So I think it would be unfair to say that the district court did not really look at this carefully. I mean, he spent a lot of time making those comparisons and showing where each of these facts was already in the public domain. I'd like to move to voluntariness. If the bar applies based on the analysis of substantially similar, Rosenberg can still try to proceed if he is an original source of the allegations in the complaint. The district court found, and Rosenberg does not contest, that on February 4th of 2013, when Rosenberg met with the OIG, the Tribune articles were already public, the OIG had already initiated an investigation of the Red Flex bribery scheme, and that's important that the investigation was ongoing by then, and the investigation was already public. It had already been discussed in some of the Tribune articles. In addition, Rosenberg does not dispute that the OIG advised him that his interview was part of an official investigation and that he had a duty to cooperate. The OIG had told him that refusal to answer or false answers would be violations of the municipal ordinance. The OIG read an advisement to him before and at the February 4th meeting, in which it was made clear that the interview was part of an official investigation and he had a duty to cooperate. In addition, in exchange for his testimony, the OIG agreed that, quote, Council alluded to the fact that this court has not addressed the issue of voluntariness in the Keaton Act context, and I think that's true, that there are no Seventh Circuit cases directly on point on that issue. However, all of the other cases that have addressed it come to the same conclusion, and that can be summed up as providing information to government investigators in response to their investigative efforts does not qualify as voluntary in the context of a key TAM suit. The cases that support this, they start with Barth, which Council referenced, that's the Eighth Circuit case, that said that disclosures were not voluntary when the relator, quote, until the government itself heard of the fraud and began its own investigation. The case that Council forgot the name, but starts with a P, is Paranich v. Sorgnard, and in that one, the Third Circuit held that, quote, rewarding relator for merely complying with the government's investigation is outside the intent of the act. The court held that responding to a subpoena is not voluntary, and that producing additional documents, even if not called for, is still not voluntary. In Prather v. AT&T, the court held that disclosures were not voluntary, where the relator was required to report fraud as part of his job, where the relator made disclosures only after he was asked to do so by his employers, and where the relator sat on the information for five years. So I think that's the framework that we're working within. I know that all of you are familiar with the standards here, so I'm not going to belabor them. The only last point I would like to make is that Glazer, the court in Glazer, says that based upon means substantially similar, and that is still the law. Unless there's any other questions, I'm done. I shouldn't say any other questions. Any questions? Apparently not. Thank you. Thank you. Mr. Collins. Thank you. May it please the court. The city joins Redflex's argument that Mr. Rosenberg was properly dismissed pursuant to the public disclosure bar, and this morning I will explain that because dismissal was proper, Mr. Rosenberg is not entitled to a share of the settlement between Redflex and the city or to fees and costs. To begin, the public disclosure bar is jurisdictional, which means that the court lacks jurisdiction to award Mr. Rosenberg anything, and this issue can be decided on that basis alone. But apart from jurisdiction, the false claims ordinance by its terms does not allow Mr. Rosenberg to recover anything. Under the ordinance, for a private individual to be eligible for recovery, the action must be brought by that person. This action is not brought by Mr. Rosenberg because he has been dismissed. As the Supreme Court explained, when the government intervenes in an action and the court determines that it lacks jurisdiction over the private individual's claims, the case goes from being brought by the relator to being brought by the government. And so here, since Mr. Rosenberg has been dismissed, this is an action that is brought by the city. And since the ordinance does not allow for a private individual to recover, in an action that is brought by the city, Mr. Rosenberg cannot recover here. Finally, Mr. Rosenberg is not entitled to fees and costs either because for a person to be eligible for that relief, he must be eligible for a share of the proceeds, which Mr. Rosenberg is not. No award, no fees. Precisely, Your Honor. And if there are no further questions, the judgment of the district court should be affirmed. Thank you. Thank you. Mr. Williams, rebuttal. So let me address the three points in quick succession because I don't have much time. First, counsel for Redflex indicated that we're quarreling with the district court's analysis of the facts. And while we disagree with the district court's conclusion about how much was actually disclosed publicly, I'll leave that to this court to actually compare what was in the public domain versus what was in the complaint. What we quarrel with primarily with the district court is the standard, is applying a standard that is essentially identical to the standard in the first step, which makes the two steps redundant to one another. It should be, there has to be something more in the second step. Otherwise, you'd never satisfy the first step and then not satisfy the second step of the analysis. And that something more I would submit is, is there genuinely new and material information that the relator has placed in the complaint? So really what I think it boils down to is the distinction between what the courts have said in the circuit that merely adding some details is not sufficient, but genuinely new and material information is. And we believe that if you compare the complaint to what was actually in the public domain, not what we would speculate might have been, but what's actually in the public domain, it is genuinely new and material, the additional allegations in the complaint, including the operative facts of the bribery scheme. Moving on to voluntariness, I think what Red Flex's counsel sort of implicitly acknowledged is there is just one case, and that's Barth out of the Eighth Circuit, that makes the distinction between getting a call versus making a call, that in the other cases there has to be legal compulsion. In Prather, I thank him for reminding me of the name of that case, in Prather it was a subpoena. But those cases didn't have this situation before them, so they didn't have to address it. Correct, and I would agree with that, Your Honor. The cases are only decided based on the facts before them. But at least in terms of this Court looking to cases elsewhere and persuasive authority elsewhere, it's Barth and nothing more, which for the reasons I've already stated, I don't believe is persuasive and should be the standard. Finally, moving to the last piece which counsel for the city just discussed, which is the question of relator share and attorney's fees, we don't quarrel with the Rockwell decision and its reasoning on its facts, which were that in that case the government intervened, eschewed the relator's claims, proceeded with its own claims, and the relator in parallel proceeded with his claims. In that case, I think it's correct to say there's no jurisdiction. It's as though the case was brought by the government because the only recovery was on the claims the government had taken on intervention. Here, as I referenced earlier, the government embraced Mr. Rosenberg's claims. The government wanted to work and sought out to work with Mr. Rosenberg closely and, in fact, did work with Mr. Rosenberg closely right up until the time the case was dismissed. So I think in that factual scenario, the reasoning in Rockwell no longer holds. Thank you very much. Thank you, and thanks to all counsel. The case is taken under advisement.